UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---------------------------------------------------------------------------------------------------------

Michael P. Tatro,                                                    No. 1:20-cv-00042-MSM-LDA

Plaintiff,

v.

Discover Financial Services, LLC; et al.,

Defendant.

---

**TARGET'S AND TD'S
MOTION FOR DISMISSAL**
(CORRECTED)

---

## Motion

Target and TD move this Court under Federal Rule of Civil Procedure 12(b)(6) for dismissal as to Mr. Tatro's claims against them for failure to state a claim upon which relief can be granted.

Counsel does not request oral argument or an evidentiary hearing.

## Defendants' Names

For this motion's purposes—

i

(a)    "Target" means Defendants Target Corporation and Target Enterprise, Inc. (misnamed as "Target Enterprises, Inc."). The complaint refers to Defendant Target Corporation as "TARGET CORP"[1] and to Defendant Target Enterprise, Inc., as "TARGET";[2] this motion uses "Target" to refer to both of those Defendants, and refers to each by name when referring to one but not the other.

(b)    "TD" means Defendant TD Bank USA, N.A. The complaint also uses "TD" to refer to Defendant TD Bank USA, N.A.[3]

---

[1]Compl. [ECF Doc. 1-1], ¶ 10 at 5 (ECF PageID 6).

[2]*Id.*, ¶ 11.

[3]*Id.*, ¶ 12.

# Table of Contents

Issues ........................................................................................................................1

Facts ........................................................................................................................2

Legal Standard .........................................................................................................3

Argument ................................................................................................................3

I.    Rhode Island law does not recognize a cause of action for negligent enablement of fraud. ............................................................................................................5

II.   The statute of limitations bars any claim for negligent enablement of imposter fraud. ......................................................................................................................8

III.  Claim preclusion bars count 40, for violation of 15 U.S.C. § 1681s-2(b) by failure to conduct a reasonable investigation with respect to Mr. Tatro's credit-reporting disputes. .................................................................................................................11

      A.    Claim preclusion bars any claim that was raised or could have been raised in the California action. ..........................................................................12

            1.    The California court was a court of competent jurisdiction. .........13

            2.    There was a final judgment on the merits. ....................................14

            3.    There is an identity of the cause of action in both the earlier and later suits. ....................................................................................14

            4.    There is an identity of parties or privies in the two suits. ..............18

      B.    Claim preclusion bars any claim involving Target's or TD's investigation with respect to the more recent credit-reporting disputes because the complaint offers no reason to doubt their earlier investigations. ...............19

IV.   Count 43, for failure to report the subject credit-card account as disputed; fails to state a claim because the Fair Credit Reporting Act provides for administrative enforcement as the exclusive remedy for any such alleged violation. ..................22

V.    The Fair Credit Reporting Act preempts count 56, for declaratory relief under the Rhode Island Declaratory Judgments Act, because it relates to the responsibilities of persons who furnish information to consumer reporting agencies. ...................25

Conclusion ...............................................................................................................28

**Issues**

1.  The Supreme Court of Rhode Island — in the context of a bank issuing a credit card — has recognized "the legal principle that [where] there is no privity between the parties," a defendant "owes a stranger no duty of vigilance." Does Rhode Island law recognize a cause of action for negligent enablement of imposter fraud?

2.  The statute of limitations for "[a]ctions for injuries to the person" — which encompasses "actions for injuries to personal dignity"— is three years. This action was filed on December 12, 2019. The alleged identity theft occurred in March 2013. Does the statute of limitations bar any claim for negligent enablement of imposter fraud?

3.  Claim preclusion applies where there are a final judgment, identity of the cause of action in both the earlier and later suits, and an identity of parties or privies. Those elements are present here with respect to an earlier suit in a California federal court. Does claim preclusion bar any claim that was raised or could have been raised in the California action?

4.  Mr. Tatro keeps renewing the same credit-reporting dispute that Target and TD investigated in 2015. Once a furnisher has adequately investigated a dispute, it need not reinvent the wheel if the consumer recycles the already-investigated allegations. The complaint alleges no "new information or other reason to doubt

1

the result of the earlier investigations." Can the complaint state a claim as to Target's and TD's investigations with respect to the later disputes?

5.   The Fair Credit Reporting Act provides for administrative enforcement as the exclusive remedy for any violation of 15 U.S.C. § 1681s-2(a). The complaint alleges violations of two statutory provisions that appear in section 1681s-2(a). Is there a private right of action for those alleged violations?

6.   The Fair Credit Reporting Act provides that "[n]o requirement or prohibition may be imposed under the laws of any State" as to "the responsibilities of persons who furnish information to consumer reporting agencies." The complaint seeks declaratory relief relating to Target's and TD's furnishing of information to consumer reporting agencies and their investigation of Mr. Tatro's credit-reporting disputes. Does the Fair Credit Reporting Act preempt those claims?

**Facts**

On a motion for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court "must assume the truth of the material facts as alleged in the complaint."[4] But the court need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," even when pleaded as factual allegations.[5] Likewise, "legal conclusions masquerading as factual conclusions will not

---

[4]*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

suffice to prevent a motion to dismiss,"[6] and a court "need not resolve unclear questions of law in favor of the plaintiff."[7]

## Legal Standard

To survive a motion for dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," then dismissal is mandatory.[10]

## Argument

Plaintiff Michael P. Tatro claims that Target, TD, and other Defendants let an imposter open and use credit accounts in his name,[11] including a Target credit-card

---

[6] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

[7] *Kansa Reins. Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

[8] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Twombly*, 550 U.S. at 555–56.

[9] *Iqbal*, 556 U.S. at 678.

[10] *Twombly*, 550 U.S. at 570.

[11] Compl. [ECF Doc. 1-1], ¶¶ 27–34 at 7–8 (ECF PageID 6).

account opened in March 2013.[12] His factual allegations regarding Target and TD appear in his complaint's paragraphs 186–240. His claims against Target and TD appear in—

- count 40, for violation of 15 U.S.C. § 1681s-2(b) by failure to conduct a reasonable investigation of Mr. Tatro's credit-reporting disputes;[13]

- count 43, for failure to report the subject credit-card account as disputed;[14] and

- count 56, for declaratory relief under the Rhode Island Declaratory Judgment Act.[15]

The complaint also alleges that Target Corporation "failed to maintain and/or adhere to policies designed to prevent, detect and/or mitigate identity theft";[16] it is unclear whether the complaint intends to state a "claim for relief" within Rule 8(a)'s meaning on that basis but, out of an abundance of caution, this motion will address those allegations as well.

---

[12]*Id.*, ¶ 204 at 49 (ECF PageID 17).

[13]*Id.*, ¶¶ 426–29 at 106–07 (ECF PageID 31).

[14]*Id.*, ¶¶ 446–50 at 111–12 (ECF PageID 32). The complaint's prayer for relief mistakenly refers to that claim as "Count 44." *Id.*, ¶ 3 at 133 (ECF PageID 38).

[15]*Id.*, ¶ 470 at 123–24 (ECF PageID 35).

[16]Compl., pt. XII(J) (heading for ¶¶ 226–29 at 54–55 (ECF PageID 18)).

I.    **Rhode Island law does not recognize a cause of action for negligent enablement of fraud.**

The tort of negligent enablement of imposter fraud, sometimes known as negligent enablement of identity fraud, has been urged by academic writers as a way of filling in a supposed gap in the federal identity-theft scheme under the Fair Credit Reporting Act.[17] But so far, only one jurisdiction — Alabama, in *Patrick v. Union State Bank*[18] — has recognized this academically promoted cause of action.[19] Several other jurisdictions have refused to recognize it, including federal and state courts around the country — in California,[20] Indiana,[21] Michigan,[22] Missouri,[23] New Jersey,[24] New York,[25]

---

[17]*See Piscitelli v. Classic Residency by Hyatt*, 973 A.2d 948, 963 n. 4 (N.J. Super. Ct. App. Div. 2009) (citing Brendan Delaney, Comment, *Identity Theft: The Fair Credit Reporting Act and Negligent Enablement of Impostor Fraud*, 54 Cath. U.L. Rev. 553 (2005); Heather M. Howard, Note, *The Negligent Enablement of Imposter Fraud: A Common-Sense Common-Law Claim*, 54 Duke L.J. 1263 (2005); Anthony E. White, Comment, *The Recognition of a Negligent Cause of Action for Victims of Identity Theft: Someone Stole My Identity, Now Who Is Going to Pay for It?*, 88 Marq. L. Rev. 847 (2005)); *id.* at 966 ("While legal scholars have argued for the creation of such a tort, two courts . . . have declined to expand the law to cover such situations.").

[18]*Patrick v. Union State Bank*, 681 So. 2d 1364 (Ala. 1996).

[19]*Robinson v. Equifax Info. Servs., LLC*, No. A-CV-040229-RP, 2005 WL 1712479, at *9 & n.20 (S.D. Ala. 2005) (citing *Patrick*).

[20]*Diaz v. Intuit, Inc.*, 5:15-CV-01778-EJD, 2017 WL 4386451 at *4 (N.D. Cal. Sept. 27, 2017) ("No California court has recognized a claim for negligent enablement of third party imposter fraud."); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 760–63 (Cal. Ct. App. 1996) (affirming judgment sustaining defendants' demurrers where "gist of . . . negligence claim is that the banks and brokerage firms owed a duty of care . . . to investigate the entity opening the account and to thereafter supervise and monitor account transactions").

North Carolina,[26] South Carolina,[27] Texas,[28] and Washington state.[29] Several courts have

shied away from negligent enablement of imposter fraud because it would effectively

---

[21]*Faurote v. Bank of America*, No. 1:17-cv-129-TLS, 2017 WL 6034371 at *2 (N.D. Ind. Dec. 5, 2017) ("There is no indication that a cause of action for negligent enablement of identity fraud exists under Indiana law.").

[22]*SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) ("We decline to adopt a new rule that being the victim in a fraudulent scheme involving an imposter bank account causes the victim to become a customer of the bank.").

[23]*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Raczkowski*, 764 F.3d 800, 803–04 (8th Cir. 2014) ("*Patrick* is somewhat of an outlier"); *Smith v. Citibank (S.D.), N.A.*, No. 00-0587-CV-W-1-ECF, 2001 WL 34079057, at *2 (W.D. Mo. 2001) (granting summary judgment for defendants because plaintiff "has failed to establish a claim of state law negligence" where "the credit card was fraudulently obtained by a former employer who had access to [plaintiff's] personal information").

[24]*Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1123 (N.J. 2009) ("*Patrick* stands for the proposition that, in an identity theft case, a bank will be deemed to have a relationship with the identity theft victim, even though that 'relationship' is based on fraud. . . . We are not persuaded that *Patrick's* rule should be adopted in New Jersey."); *Piscitelli*, 2009 WL 1811072 at *15–18.

[25]*Ladino v. Bank of Am.*, 861 N.Y.S.2d 683, 687 (N.Y. App. Div. 2008) ("to the extent the plaintiff's complaint seeks, in effect, to recover damages on the theory that Fleet negligently issued a loan to an imposter, it should have been dismissed because New York does not recognize a cause of action for 'negligent enablement of imposter fraud'"); *Polzer v. TRW, Inc.*, 682 N.Y.S.2d 194, 195 (N.Y. App. Div. 1998) ("New York does not recognize a cause of action for 'negligent enablement of impostor fraud,' and . . . plaintiff otherwise failed to state a cause of action in negligence, because [defendants] had no special relationship either with the impostor who stole the plaintiffs' credit information and fraudulently obtained credit cards, or with plaintiffs, with whom they stood simply in a creditor/debtor relationship").

[26]*Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224–27 (4th Cir. 2002) (predicting North Carolina law) (affirming dismissal of claim "that Wachovia negligently allowed Reid to establish and operate a fraudulent bank account and negligently failed to train its employees to detect fraud"); *Bottom v. Bailey*, 767 S.E.2d 883, 886–87 (N.C. Ct. App. 2014).

impose strict liability for identity theft over which the merchants had little or no control: "We conclude, however, that such a rule would in effect impose liability without fault. At least in the absence of legislation, the doctrine of strict liability applies only to conditions and activities which are abnormally dangerous to life, limb or property."[30]

And even Alabama courts, both state and federal, have retreated from the *Patrick* case that recognized the new tort:[31] "The expansive holding in *Patrick* . . . has met with near universal disapproval. Within its own state, *Patrick* has been distinguished, it has been criticized, and its value as precedent has been limited exclusively to a repetition of the elements of a common law tort."[32] Moreover, "[i]n other jurisdictions, *Patrick* has

---

[27]*Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 278 (S.C. 2003) ("Since there is no duty on the part of credit card issuers to protect potential victims of identity theft . . . South Carolina does not recognize the tort of negligent enablement of imposter fraud.").

[28]*Guerra v. Regions Bank*, 188 S.W.3d 744, 747–48 (Tex. Ct. App. 2006) (rejecting Alabama rule).

[29]*Burdick v. Rosenthal Collins Group, LLC*, 194 Wash. App. 1016, 2016 WL 3082652, at *8 (Wash. Ct. App. May 31, 2016); *Zabka v. Bank of Am. Corp.*, 127 P.3d 722, 724–25 (Wash. Ct. App. 2006) (affirming dismissal of defrauded depositors' negligence claim against bank; distinguishing *Patrick*).

[30]*Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C. 1991).

[31]*Smith v. AmSouth Bank, Inc.*, 892 So.2d 905, 911 (Ala. 2004) ("Our inquiry in *Patrick* was not properly focused."); *Robinson v. Equifax Info. Servs., LLC*, No. CV-04-0229-RP, 2005 WL 1712479, at *9 n.20 (S.D. Ala. July 22, 2005) ("According to [defendant] *Patrick* is the only Alabama case imposing such a duty.").

[32]*Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1123 (N.J. 2009) (internal citations omitted); *see* Raymond G. Mullady, Jr. & Scott D. Hansen, *Identity Theft Litigation: A Roadmap for Defense and Protection*, 2008 Utah L. Rev. 563, 588 ("Fortunately for businesses, this decision has not been widely followed, even in Alabama").

fared far worse. Federal courts either have rejected or limited *Patrick's* import."[33] One article noted that "no court has found for a plaintiff in an identity theft case on the basis of *Patrick*. . . . Because of the narrow interpretation it has received so far, . . . . it is unlikely that *Patrick* will form the basis of a new common law negligence tort."[34] Another leading commentary concluded that "courts have not yet recognized a distinct cause of action for 'identity theft' or 'negligent enablement of imposter fraud.'"[35]

The Rhode Island courts have not reached the question of whether Rhode Island recognizes a cause of action for negligent enablement of imposter fraud. But the Supreme Court of Rhode Island — in the context of a bank issuing a credit card — has recognized "the legal principle that [where] there is no privity between the parties," a defendant "owes a stranger no duty of vigilance."[36] This Court should presume that Rhode Island follows the prevailing majority rule, and should therefore hold that Rhode Island law does not recognize a cause of action for negligent enablement of imposter fraud.

II.    **The statute of limitations bars any claim for negligent enablement of imposter fraud.**

Even if a claim for negligent enablement of imposter fraud were available under Rhode Island law, the statute of limitations would bar any such claim in this case.

---

[33]*Brunson*, 972 A.2d at 1124.

[34]Raymond G. Mullady, Jr. & Scott D. Hansen, *Identity Theft Litigation: A Roadmap for Defense and Protection*, 2008 Utah L. Rev. 563, 588.

[35]Lori J. Parker, 31 *Causes of Action 2d* § 5 (2008 updated Mar. 2009).

[36]*Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998).

The statute of limitations for "[a]ctions for injuries to the person" — which encompasses "actions for injuries to personal dignity"[37] and "civil rights actions"[38] — is three years.[39] This action was filed in Rhode Island Superior Court on December 12, 2019.[40] The alleged identity theft occurred in March 2013[41] — well over three years before this action was commenced.

The complaint does not contain any allegation that Target or TD allowed the use of the allegedly fraudulent account after March 2013. The complaint alleges generally in its introductory paragraphs, without regard to any particular Defendant, that "an identity thief/imposter ('IMPOSTER') gained unlawful access to, and control over, the Plaintiff's means of identification (i.e. name, date of birth, social security number and drivers license number)" "beginning in approximately 2011 and continuing through 2014,"[42] and that "[o]nce the FRAUDULENT ACCOUNTS were opened in the Plaintiff's name, the IMPOSTER was allowed to make purchases with those credit accounts and credit

---

[37]*Lyons v. Scituate*, 554 A.2d 1034, 1036 (R.I. 1989) (citing *Partin v. St. Johnsbury Co.*, 447 F. Supp. 1297 (D.R.I. 1978)).

[38]*Id.* (citing *Walden, III, Inc. v. State of R.I.*, 576 F.2d 945 (1st Cir. 1978)).

[39]R.I. Gen. Laws § 9-1-14(b) (limitation of actions for personal injuries).

[40]Notice Removal [ECF Doc. 1], ¶ 1 at 1.

[41]Compl. [ECF Doc. 1-1], ¶ 204 at 49 (ECF PageID 17) ("Upon information and belief, in March of 2013, a person posing as the Plaintiff (the 'IMPOSTER'), provided the Plaintiff's means of identification; including, but not limited to the Plaintiff's name and social security number to an employee at one of TARGET CORP'S retail locations.").

[42]Compl., ¶ 27 at 7 (ECF PageID 6).

lines."[43] Those allegations do not mention Target or TD, nor does the complaint adopt them by reference in any claim against Target or TD. But even if they did apply to Target and TD, conduct that occurred "continuing through 2014" would still fall beyond the limitations period.

The complaint acknowledges that

> Although the four corners of this Complaint contain statements of facts which, in some cases, may fall outside the applicable statute of limitations, those facts are provided for background and historical purposes only. ALL causes of action pled against the defendants named in this Complaint are based entirely upon conduct which occurred within the limitation period,' set forth in the Fair Credit Reporting Act (15 U.S.C. 1681p), the fair Debt Collection Practices Act (15 U.S.C. § 1692(k)(d)), the Rhode Island fair Debt Collection Practices Act (R.I.G.L. § 19-14.9-13(5)), and/or Rhode Island's three year period of limitations on personal injury (R.I.G.L. § 9-1-14(b)).[44]

The statute of limitations therefore bars any claim for negligent enablement of imposter fraud, regardless of whether that alleged negligence occurred when the account was opened, or later when the allegedly fraudulent account was used.

---

[43]*Id.*, ¶ 32 at 8 (ECF PageID 6).

[44]*Id.*, ¶ 51 at 14 (ECF PageID 8).

III.  **Claim preclusion bars count 40, for violation of 15 U.S.C. § 1681s-2(b) by failure to conduct a reasonable investigation with respect to Mr. Tatro's credit-reporting disputes.**

The doctrine of claim preclusion (also known as res judicata[45]) applies where a court of competent jurisdiction[46] has decided an earlier case and three elements are present: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits."[47] The doctrine serves several purposes, including "protecting litigants from the burden of relitigating an identical issue with the same party or his privy," "promoting judicial economy by preventing needless litigation,"[48] and "avoid[ing] the continuous hardships caused to one party by successively filing various suits related to the same matter."[49] The doctrine "operates to bar the relitigation of issues that were or could have been raised in an earlier action between the same parties prescinding from the

---

[45]BLACK'S LAW DICTIONARY 1567 (11th ed. 2019) *s.v.* "res judicata"; *Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 583 n. 9 (1st Cir. 1995) ("Res judicata is sometimes referred to as claim preclusion").

[46]*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 89 (1st Cir. 2007) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48–49 (1897)).

[47]*Benenson v. Comm'r of Internal Revenue*, 887 F.3d 511, 516 (1st Cir. 2018) (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1165 (1st Cir. 1991)); *accord Haag v. United States*, 589 F.3d 43, 45 (1st Cir. 2009).

[48]*FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 79 (1st Cir. 2011) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979))).

[49]*Futura Dev. Corp. v. Centex Corp.*, 761 F.2d 33, 45 (1st Cir. 1985) (quoting *Zambrana v. Super. Ct.*, 100 P.R.R. 178, 179 (1971)).

same set of operative facts."[50] It therefore "acts as a bar not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact."[51] If the doctrine applies, then "all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment."[52]

A.     **Claim preclusion bars any claim that was raised or could have been raised in the California action.**

As the complaint acknowledges, Mr. Tatro's claims in this action are "related to a separate action filed in the Southern District of California":[53]

> In addition to reporting his continued dispute of the TARGET ACCOUNT to TRANS UNION, EXPERIAN and/or EQUIFAX, the Plaintiff also delivered notice of his continued dispute of the TARGET ACCOUNT directly to TARGET in the form of, inter alia, . . . (2) service upon TARGET'S Registered Agent, of a Notice of Intent to Sue and a copy of a lawsuit which was filed in the United States District Court, for the Southern District of California, styled as Michael P. Tatro v. Sterling Jewelers, Inc. et al, Case Number: 3:17-1305-JAH (see, paragraphs 235–236, supra), in which lawsuit TARGET entered an appearance, through counsel, and has prosecuted a motion to dismiss on venue and jurisdiction grounds.[54]

---

[50]*In re Carvalho*, 335 F.3d 45, 49 (1st Cir. 2003); *accord Wolf v. Gruntal & Co.*, 45 F.3d 524, 527 (1st Cir. 1995) (res judicata bars "litigation of claims that arose from the same set of operative facts and could have been raised in the prior proceeding").

[51]*Quinn v. Ocwen Loan Servicing, LLC*, 709 F. App'x 530, 532 (11th Cir. 2017).

[52]*In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007).

[53]Compl. [ECF Doc. 1-1], ¶ 235 at 57 (ECF PageID 19).

[54]*Id.*, ¶ 447 at 111–12 (ECF PageID 32).

12

The California action was filed on June 26, 2017, and named Target Corporate Services, Inc. (now known as Target Enterprise, Inc.), and TD as Defendants.[55] Target and TD ultimately reached a resolution with Mr. Tatro regarding his claims in the California action, as a result of which Target, TD, and Mr. Tatro stipulated to the dismissal of those claims with prejudice.[56] The California court accordingly entered an order dismissing the action as to Target and TD, with prejudice.[57]

This action is a thinly veiled attempt to relitigate the issues that the California court finally adjudicated in the California action. The elements of claim preclusion are present here:

1.      **The California court was a court of competent jurisdiction.**

The California federal court — the United States District Court for the Southern District of California — was "a court of competent jurisdiction" to resolve claims under the Fair Credit Reporting Act.[58]

---

[55]Compl. [ECF Doc. 1], *Tatro v. Sterling Jewelers Inc.*, No. 3:17-cv-01305-JAH-DEB (S.D. Cal. filed June 26, 2017).

[56]Stipulation of Dismissal with Prejudice as to Defendants Target Enterprise, Inc. and TD Bank USA, N.A. [ECF Doc. 134], *Tatro v. Sterling Jewelers Inc.*, No. 3:17-cv-01305-JAH-DEB (S.D. Cal. filed May 12, 2020).

[57]Order Granting Joint Stipulated Motion of Dismissal with Prejudice as to Defendants Target Enterprise, Inc. and TD Bank USA, N.A. [ECF Doc. 135], *Tatro v. Sterling Jewelers Inc.*, No. 3:17-cv-01305-JAH-DEB (S.D. Cal. May 15, 2020).

[58]15 U.S.C. § 1681p (jurisdiction of courts) ("An action to enforce any liability created under this subchapter [the Fair Credit Report Act, 15 U.S.C. ch. 41, subch. III]

2.    **There was a final judgment on the merits.**

A court's order dismissing a case with prejudice pursuant to the parties' stiuulation is entitled to preclusive effect: "A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action."[59] A settled case is entitled to the same preclusive effect as a case decided by a judge or jury.[60] The dismissal of this action with prejudice in the California federal court therefore operates as a judgment on the merits.

3.    **There is an identity of the cause of action in both the earlier and later suits.**

To determine whether there is "an identity of the cause of action in both the earlier and later suits" that results in claim preclusion, the "inquiry does not turn on the labels the plaintiff attaches to its various claims, but rather 'boils down to whether the

---

may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction.").

[59]*Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995); *accord United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998) ("a voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the res judicata criterion").

[60]*RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 532 (1st Cir. 2016) ("settlements may have preclusive effect if there is court approval of the settlement or there is entry of judgment with prejudice"); *D'Amario v. Butler Hosp.*, 921 F.2d 8, 10 (1st Cir. 1990) ("a consent agreement between the parties has the full force and effect of a decree and is res judicata").

causes of action arise out of a common nucleus of operative facts.'"[61] The California

action concerned the same "nucleus of operative facts" as this case concerns:

| California action[62] | This action[63] |
|---|---|
| 460.    Upon information and belief, in March of 2013, a person posing as the Plaintiff (the "imposter" or the "impersonator"), provided the Plaintiff's means of identification; including, but not limited to the Plaintiff's name and social security number, to an employee of TARGET or through TARGET'S website, and applied for credit in the Plaintiff's name. | 204.    Upon information and belief, in March of 2013, a person posing as the Plaintiff (the "IMPOSTER"), provided the Plaintiff's means of identification; including, but not limited to the Plaintiff's name and social security number to an employee at one of TARGET CORP'S retail locations. |
| 465.    At the time of the ORIGINAL TARGET CREDIT TRANSACTION, the Plainitff was in the custody of the Federal Bureau of Prisons and/or the Rhode Island Department of Corrections and the Plaintiff did not open or authorize the opening of any credit account in his name, and the Plaintiff did not participate in any way in the ORIGINAL TARGET CREDIT TRANSACTION, and TARGET failed to obtain positive identification from the imposter before accepting the Plaintiff's means of identification and transferring that means of identification to consumer reporting agencies and requesting credit reports about the Plaintiff. | 211.    At the time of the ORIGINAL TARGET CREDIT TRANSACTION, the Plaintiff was in the custody of the Federal Bureau of Prisons, and/or the Rhode Island Department of Corrections, and the Plaintiff did not participate in any way in the ORIGINAL TARGET CREDIT TRANSACTION, and TARGET failed to obtain positive identification from the IMPOSTER before transferring the Plaintiff's means of identification to consumer reporting agencies and requesting credit reports about the Plaintiff, and then opening the TARGET ACCOUNT in the Plaintiff's name. |

---

[61]*Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 15 (1st Cir. 2010) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998)).

[62]Compl. [ECF Doc. 1], *Tatro v. Sterling Jewelers Inc.*, No. 3:17-cv-01305-JAH-DEB (S.D. Cal. filed June 26, 2017).

[63]Compl. [ECF Doc. 1-1].

| | |
|---|---|
| 466.    Upon information and belief, TARGET and/or TD BANK began reporting the TARGET ACCOUNT to consumer reporting agencies in April of 2013. | 212.    Upon information and belief, TARGET began reporting the TARGET ACCOUNT to EXPERIAN, TRANS UNION and EQUIFAX in April of 2013. |
| 470.    The Plaintiff disputed the TARGET ACCOUNTS directly to EXPERIAN, TRANS UNION and EQUIFAX, between July and September of 2015; and, the Plaintiff included within such dispute a notice of his incarceration status and history and further notified EXPERIAN, TRANS UNION and EQUIFAX that he was a victim of identity fraud. | 216.    As of the filing of the instant Complaint, the Plaintiff has disputed the TARGET ACCOUNT directly to EXPERIAN, TRANS UNION and EQUIFAX on multiple occasions, including, inter alia, between July and September of 2015, in December of 2016, between May and July of 2017, between May and June of 2018 and in August of 2019.<br><br>217.    When filing the aforementioned disputes directly with EXPERIAN, TRANS UNION and EQUIFAX between July and September of 2015, in December of 2016, between May and July of 2017, between May and June of 2018 and in August of 2019, the Plaintiff included within such disputes a notice of his incarceration status and history, as well as his assertion that he was a victim of identity fraud. |
| 471.    Upon in formation and belief, EXPERIAN, TRANS UNION and EQUIFAX each notified TARGET of the Plaintiff's dispute of the TARGET ACCOUNT via their automated dispute resolution protocol. | 218.    Upon information and belief, EXPERIAN, TRANS UNION AND EQUIFAX each notified TARGET of the Plaintiff's dispute of the TARGET ACCOUNT via their respective automated dispute resolution protocols, including notice of the Plaintiff's assertion of identity fraud and incarceration. |

| | |
|---|---|
| 472.    Upon information and belief, the investigation conducted by TARGET in response to the dispute(s) filed by the Plaintiff (and electronically forwarded to TARGET to TRANS UNION, EXPERIAN and EQUIFAX) was limited to comparing the means of identification of the Plaintiff contained in TARGET's internal files with the means of identification furnished to TARGET by those consumer reporting agencies within the four corners of the automated dispute notification. | 219.    Upon information and belief, the investigations conducted by TARGET in response to the multiple disputes filed by the Plaintiff -- and electronically forwarded to TARGET by each consumer reporting agency -- were limited to a cursory comparison by TARGET of two particular date sets, i.e. the information provided to a TARGET CORP employee by the IMPOSTER, and the personal information about the Plaintiff contained in the 'consumer reporting agencies' internal files. |
| 473.    Upon information and belief, TARGET did not make any effort to confirm the Plaintiff's incarceration status or history; and also made no effort to verify the Plaintiff's claim that he was a victim of identity fraud, both of which relevant facts were communicated to the consumer reporting agencies and conveyed by those consumer reporting agencies to TARGET within the dispute notification | 220.    Upon information and belief, TARGET did not make any effort to investigate or otherwise confirm the Plaintiff's incarceration status or history; and also made no effort to verify the Plaintiff's claim that he was a victim of identity fraud, both of which facts were communicated to the consumer reporting agencies by the Plaintiff, and then to TARGET by the consumer reporting agencies, via their automated dispute resolution protocols. |
| 474.    TARGET's investigation of the Plaintiff's dispute was wholly inadequate and consisted of nothing more than a canned comparison of information TARGET obtained from the imposter - not directly from the Plaintiff, against the information about the Plaintiff contained within the actual disputes received from EXPERIAN, TRANS UNION and EQUIFAX. | 221.    Each one of TARGET's investigations of the Plaintiff's multiple disputes were wholly inadequate and consisted of nothing more than a canned comparison of information that a TARGET CORP employee obtained from the IMPOSTER against the information about the Plaintiff contained within the actual automated disputes received from EXPERIAN, TRANS UNION and EQUIFAX, and then robtically re-reporting that the TARGET ACCOUNT was verified as belonging to the Plaintiff. |

| | |
|---|---|
| 477.    TARGET'S conduct as described herein was negligent and was and continues to be in conscious and willful disregard to the Plaintiff's right to privacy as well as his rights under the Fair Credit Reporting Act. | 239.    TARGET's failure and/or refusal to delete the TARGET ACCOUNT from the PLAINTIFF's credit reports, even after having been properly notified about the Plaintiff's disputes and his claims of identity fraud was negligent.<br><br>240.    TARGET's failure and/or refusal to delete the TARGET ACCOUNT from the PLAINTIFF's credit reports, even after having been properly notified about the Plaintiff's disputes and claims of identity fraud was willful. |
| 478.    As of the filing of the instant Complaint, TARGET continues to report the TARGET ACCOUNTS to EXPERIAN, TRANS UNION and EQUIFAX, attributing that account to the Plaintiff in a negative and derogatory manner. | 222.    As of the filing of this Complaint, TARGET continues to report the TARGET ACCOUNT to EXPERIAN and EQUIFAX in a negative and inaccurate fashion against the Plaintiff, even though (a) TARGET has received notification - directly from the consumer reporting agencies -- of the multiple disputes filed by the Plaintiff, and (b) those multiple disputes included Plaintiff's claim that he was a victim of identity fraud while incarcerated. |

4.    **There is an identity of parties or privies in the two suits.**

The California action involved both Target and TD, as does this action. The

California action did not name Target Corporation as a Defendant, but named its wholly

owned subsidiary Target Enterprise, Inc.[64] (formerly known as Target Corporate

Services, Inc.), with whom Target Corporation was in privity because of its involvement

---

[64]Compl. [ECF Doc. 1-1], ¶ 11 at 5 (ECF PageID 6) ("TARGET ENTERPRISES, INC. (TARGET), is a wholly owned subsidiary of Target Corporation"); *id.*, ¶ 187 at 47 (ECF PageID 16) ("Target Enterprises, Inc., is a wholly owned subsidiary of Target Corporation.").

with the Target-branded credit card that TD issues and Target Enterprise, Inc., services.[65]
The complaint details that joint involvement.[66]

      **B.**    **Claim preclusion bars any claim involving Target's or TD's investigation with respect to the more recent credit-reporting disputes because the complaint offers no reason to doubt their earlier investigations.**

Claim preclusion bars any claim that was raised or could have been raised in the California action, which certainly bars any claim involving Target's or TD's investigation with respect to any credit-reporting dispute before the California action was filed on June 26, 2017.[67] This action concerns credit-reporting disputes both before and after that date: "in July and September of 2015, in December of 2016, between May and July of 2017, between May and June of 2018 and in August of 2019."[68]

Claim preclusion also bars even claims involving Target's or TD's investigation with respect to credit-reporting disputes after June 2017, because the doctrine "operates

---

[65] *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st Cir. 2000) ("A further factor supporting determination of privity here is that the companies are parent and wholly owned subsidiary. . . . We do not suggest that the parent-subsidiary relationship automatically establishes privity, but given the relationship of the companies in this case coupled with their joint involvement with the product in question, we have little doubt that a Rhode Island court would treat a merits judgment in favor of Urohealth as resolving an identical claim against its wholly owned subsidiary.").

[66] Compl. [ECF Doc. 1-1], ¶¶ 186–203 at 47–49 (ECF PageID 16–17).

[67] Compl. [ECF Doc. 1], *Tatro v. Sterling Jewelers Inc.*, No. 3:17-cv-01305-JAH-DEB (S.D. Cal. filed June 26, 2017).

[68] Compl. [ECF Doc. 1-1], ¶¶ 216–17 at 51–52 (ECF PageID 17).

to bar the relitigation of issues that were or *could have been raised* in an earlier action,"[69]

and Mr. Tatro could have raised claims involving the later litigation by seeking leave to

amend his complaint.

But his claims involving Target's and TD's investigations with respect to the later

disputes fail for another reason as well: because the complaint offers no reason to doubt

their earlier investigations. The complaint treats all Mr. Tatro's credit-reporting disputes,

both before and after he filed the California action, together, and acknowledges that all

the disputes involved the same allegations:

> 216.  As of the filing of the instant Complaint, the Plaintiff has disputed
> the TARGET ACCOUNT directly to EXPERIAN, TRANS
> UNION and EQUIFAX on multiple occasions, including, inter
> alia, between July and September of 2015, in December of 2016,
> between May and July of 2017, between May and June of 2018
> and in August of 2019.
>
> 217.  When filing the aforementioned disputes directly with
> EXPERIAN, TRANS UNION and EQUIFAX between July and
> September of 2015, in December of 2016, between May and July
> of 2017, between May and June of 2018 and in August of 2019,
> the Plaintiff included within such disputes a notice of his
> incarceration status and history, as well as his assertion that he was
> a victim of identity fraud.[70]

Mr. Tatro keeps renewing the same credit-reporting dispute that Target and TD

investigated in July–September 2015. And December 2016. A furnisher's duty in such

---

[69]*In re Carvalho*, 335 F.3d 45, 49 (1st Cir. 2003) (emphasis added); *accord Wolf v. Gruntal & Co.*, 45 F.3d 524, 527 (1st Cir. 1995) (res judicata bars "litigation of claims that arose from the same set of operative facts and could have been raised in the prior proceeding").

[70]Compl., ¶¶ 216–17 at 51–52 (ECF PageID 17)..

circumstances is minimal and, once it has adequately investigated a dispute, it need not

reinvent the wheel if the consumer recycles the same already-investigated allegations:

> Importantly, the CRA notice of dispute that triggered [the furnisher's] duty to investigate did not identify any reason to doubt the veracity of the initial investigation. Furthermore, the notice of dispute did not provide any new information that would have prompted [the furnisher] to supplement the initial investigation with any additional procedures or inquiries.
> . . . . Without any indication in the allegations that the initial investigation lacked reliability or that new information was available to discover, [the furnisher's] decision not to repeat a previously-conducted investigation cannot have been unreasonable. Congress could not have intended to place a burden on furnishers continually to reinvestigate a particular transaction, without any new information or other reason to doubt the result of the earlier investigation, every time the consumer disputes again the transaction with a CRA because the investigation was not resolved in his favor.[71]

The complaint alleges no "new information or other reason to doubt the result of the

earlier investigations," other than the fact that Mr. Tatro continues to disagree with their

results, so it cannot state a claim as to Target's and TD's investigations with respect to

the later disputes any more than it can state a claim as to their investigations with respect

to the earlier disputes — whose reasonableness the California action resolved in Target's

and TD's favor.

---

[71]*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009).

IV.    **Count 43, for failure to report the subject credit-card account as disputed; fails to state a claim because the Fair Credit Reporting Act provides for administrative enforcement as the exclusive remedy for any such alleged violation.**

The complaint claims in count 43 that "[i]n addition to reporting his continued dispute of the TARGET ACCOUNT to TRANS UNION, EXPERIAN and/or EQUIFAX, the Plaintiff also delivered notice of his continued dispute of the TARGET ACCOUNT directly to TARGET,"[72] that "TARGET knowingly and willfully failed or otherwise refused to report the TARGET ACCOUNT to TRANS UNION, EXPERIAN and/or EQUIFAX as disputed by the Plaintiff,"[73] and that Target's alleged failure "violated, and continues to violate, TARGET [sic] lawful duty and responsibility to report 'incomplete or inaccurate' information under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(C)&(D)."[74]

Actually, that's not what those provisions — section 1681s-2(b)(1)(C)–(D) — say. Here is what they do say:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
> . . . .
> (C)    report the results of the investigation to the consumer reporting agency;
> (D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer

---

[72]Compl. [ECF Doc. 1-1], ¶ 447 at 111–12 (ECF PageID 32).

[73]*Id.*, ¶ 448 at 112.

[74]*Id.*, ¶ 449.

> reporting agencies to which the person furnished the
> information and that compile and maintain files on
> consumers on a nationwide basis . . . .[75]

Those provisions apply only after a furnisher "receiv[es] notice [from a consumer reporting agency] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" and has had an opportunity for investigation.[76] Count 40 makes such a claim. Count 43, on the other hand, complains that "Plaintiff also delivered notice of his continued dispute . . . directly to TARGET." Section 1681s-2(b) therefore does not apply.

The Fair Credit Reporting Act does provide that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."[77] The Act also requires that "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."[78] Both provisions appear in section

---

[75]15 U.S.C. § 1681s-2(b)(1)(C)–(D) (duties of furnishers of information upon notice of dispute).

[76]15 U.S.C. § 1681s-2(b)(1) (duties of furnishers of information upon notice of dispute).

[77]15 U.S.C. § 1681s-2(a)(1)(A) (reporting information with actual knowledge of errors).

[78]15 U.S.C. § 1681s-2(a)(3) (duty to provide notice of dispute).

1681s-2(a), rather than section 1681s-2(b). The Act provides for administrative enforcement as the exclusive remedy for any such alleged violation.

The Fair Credit Reporting Act provides for civil liability through a private civil action in two sections: 15 U.S.C. §§ 1681n–o. But section 1681s-2, which establishes the "responsibilities of furnishers of information to consumer reporting agencies,"[79] provides that "sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder."[80] "Subsection (a)" refers to section 1681s-2(a), captioned "[d]uty of furnishers of information to provide accurate information," and enforcement of that provision can occur only "as provided in section 1681s(c)(1)(B) of this title"[81] — which provides for enforcement by "the chief law enforcement officer of a State, or an official or agency designated by a State,"[82] who "may bring an action on behalf of the residents of the State"[83] to recover "damages for which the person would, but for section 1681s-2(c) of this title, be liable to such residents as a result of the violation"[84] of "any of paragraphs (1) through (3) of

---

[79]15 U.S.C. § 1681s-2 (caption).

[80]*Id.* (c)(1) (limitation on liability).

[81]15 U.S.C. § 1681s(c).

[82]*Id.* (c)(1) (State action for violations—authority of States).

[83]*Id.* (c)(1)(B).

[84]*Id.* (c)(1)(B)(ii).

24

section 1681s-2(c) of this title."[85] TD's alleged violations under section 1681s-2(a)

therefore fall within the limitation of liability under section 1681s-2(c), so administrative

enforcement is the exclusive remedy under section 1681s(c)(1)(B) for those alleged

violations.[86]

Count 43, for failure to report the subject credit-card account as disputed;

therefore fails to state a claim because the Fair Credit Reporting Act provides for

administrative enforcement as the exclusive remedy for any such alleged violation.

V.    **The Fair Credit Reporting Act preempts count 56, for declaratory relief under the Rhode Island Declaratory Judgments Act, because it relates to the responsibilities of persons who furnish information to consumer reporting agencies.**

Finally, the complaint in count 56 seeks relief under the Rhode Island Declaratory

Judgments Act. The complaint identifies Target and TD as "furnishers" within the Fair

Credit Reporting Act's meaning:

> 426.    TARGET CORP., TARGET and TD BANK are each a "furnisher" of information to consumer reporting agencies insofar as, in the ordinary course of business, it regularly furnishes information to EXPERIAN, TRANS UNION and/or EQUIFAX about its relationships with individual consumers.

---

[85]*Id.*

[86]*Walton v. BMO Harris Bank N.A.*, No. 18-2877, 2019 U.S. App. LEXIS 4054, at *6 n. 1 (7th Cir. Feb. 11, 2019) ("Walton cannot bring an individual claim against BMO Harris for transmitting inaccurate information; only the Federal Trade Commission (or a state agency) may bring such a claim." (citing *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011))); *Purcell*, 659 F.3d at 623 ("although Purcell's claim arises under § 1681-2(a), that section does not create a private right of action" (citing *Perry v. First Nat'l Bank*, 459 F.3d 816 (7th Cir. 2006))).

25

427.    As a "furnisher" of information to consumer reporting agencies, TARGET CORP., TARGET and TD BANK are subject to the requirements of 15 U.S.C. § 1681s-2(b), governing the duty of "furnishers" of information, to consumer reporting agencies to conduct a reasonable investigation of disputes received directly from a consumer reporting agency.[87]

The relief that count 56 seeks relates to Target's and TD's furnishing of information to consumer reporting agencies and their investigation of Mr. Tatro's credit-reporting disputes:

(A) the opening of the TARGET ACCOUNT by the imposter; (B) TARGET reporting and re-reporting of the TARGET ACCOUNT to consumer ·reporting agencies; (C) TARGET's inadequate investigation of the Plaintiff's disputes of the TARGET ACCOUNT; (D) TARGET failure and/or refusal to report the TARGET ACCOUNT to consumer reporting agencies as being disputed by the Plaintiff; (E) TARGET failure to maintain and/or enforce internal policies and procedures to insure compliance with the Fair Credit Reporting Act, (F) TARGET failure to maintain and/or enforce internal policies and procedures to detect and prevent identity theft, and (G) any and all other claims raised herein, or which may be raised (by amendment of the Complaint) at a later date . . . .[88]

Congress, finding that "[a]n elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers,"[89] has extensively and exhaustively regulated the credit-granting and consumer-credit-reporting industries. To impose uniform nationwide standards on the industry, Congress enacted the Fair Credit

---

[87]Compl. [ECF Doc. 1-1], ¶¶ 426–27 at 106–07 (ECF page ID 31).

[88]Compl., ¶ 470 at 123–24 (ECF PageID 35).

[89]15 U.S.C. § 1681(a)(2).

26

Reporting Act,[90] which regulates both consumer reporting agencies[91] and creditors who furnish information to them.[92] The Act establishes a detailed scheme by which a consumer can dispute any information that is being reported to a consumer reporting agency.[93] The Act likewise sets forth detailed steps that a furnisher must take in case of such a dispute.[94]

Congress amended the Fair Credit Reporting Act in 1996 by inserting a new provision, section 625(b)(1)(F) (codified at 15 U.S.C. § 1681t(b)(1)(F)), under the caption "preemption of state law,"[95] to the effect that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."[96] That provision preempts

---

[90]Fair Credit Reporting Act, Pub. L. No. 91-508, 84 Stat. 1127 (1970) (codified at 15 U.S.C. ch. 42, subch. III, §§ 1681–81x).

[91]*See* 15 U.S.C. § 1681(a)(3)–(4).

[92]*See* 15 U.S.C. § 1681s-2 (responsibilities of furnishers of information to consumer reporting agencies).

[93]*See* 15 U.S.C. § 1681i (procedure in case of disputed accuracy).

[94]*See* 15 U.S.C. § 1681s-2(b) (duties of furnishers of information upon notice of dispute).

[95]Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 2419, 110 Stat. 3009, 3009-452 to -453 (1996). The caption "preemption of state law" appeared in the enacting statute but was not codified.

[96]15 U.S.C. § 1681t(b)(1)(F).

27

state "laws" in any form, including "all sources of legal rules — statutes, regulations, judicial decisions, and administrative decisions."[97]

The Fair Credit Reporting Act therefore preempts the claim under the Rhode Island Declaratory Judgments Act because it relates to the responsibilities of persons who furnish information to consumer reporting agencies.

## Conclusion

Rhode Island law does not recognize a cause of action for negligent enablement of fraud. Even if a claim for negligent enablement of imposter fraud were available under Rhode Island law, the statute of limitations would bar any such claim in this case.

Claim preclusion bars count 40, for violation of 15 U.S.C. § 1681s-2(b) by failure to conduct a reasonable investigation with respect to Mr. Tatro's credit-reporting disputes.

Count 43, for failure to report the subject credit-card account as disputed; fails to state a claim because the Fair Credit Reporting Act provides for administrative enforcement as the exclusive remedy for any such alleged violation.

---

[97]*Purcell v. Bank of Am.*, 659 F.3d 622, 624 (7th Cir. 2011); *accord Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992)); *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009) ("Plaintiff's distinction between statutory and common-law claims under this section of the FCRA's express preemption provision is likewise unpersuasive."); *Marshall v. Swift River Acad., LLC*, 327 F. App'x 13, 15 (9th Cir. 2009).

The Fair Credit Reporting Act preempts count 56, for declaratory relief under the Rhode Island Declaratory Judgments Act, because it relates to the responsibilities of persons who furnish information to consumer reporting agencies.

Therefore, Target and TD respectfully ask that this Court dismiss Mr. Tatro's claims against them for failure to state a claim upon which relief can be granted.

July 13, 2020.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, Minn. License No.
    0223633 (admitted pro hac vice)
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

in association with

HINSHAW & CULBERTSON LLP

/s/ Joseph P. Murphy

_____

Joseph P. Murphy, Bar No. 8160
Fifth Floor
56 Exchange Terrace
Providence, RI 02903
jmurphy@hinshawlaw.com

Attorneys for Defendants
    Target Corporation, Target Enterprise,
    Inc. (misnamed as "Target Enterprises,
    Inc."), and TD Bank USA, N.A.

29

## Certificate of Service

This document has been filed electronically and is available for viewing and downloading from the ECF system.

A copy is also being served by postal mail upon Plaintiff Michael P. Tatro at this address:

> Michael P. Tatro
> ND-6
> 400 Narragansett Parkway
> Warwick, RI 02888

July 13, 2020.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, Minn. License No.
   0223633 (admitted pro hac vice)
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com